HURLBUT & HODGES *v.* JONAS G. CHITTENDEN.

*Book Account.     Contract.     Consideration.*

Where a contract was made between the plaintiffs and the defendant and B, a third person, that the defendant should employ B. to build a saw mill, and that defendant should pay to the plaintiffs the amount of B's earnings, to be applied on a debt which B. had previously contracted with the plaintiffs ; there was also a contract between the defendant and B. that if the mill did not do a good business, defendant need not pay anything ; it turned out that the mill was good for nothing, and that the labor of B. was a damage to the defendant ; under this state of facts, *it was held*, that the plaintiffs could not enforce payment of B's wages, (though they were ignorant of the last named contract between the defendant and B,) as the defendant received no value for his promise to the plaintiffs, and the plaintiffs parted with nothing, their debt having been previously contracted with B.

BOOK ACCOUNT. Judgment to account was rendered in the County Court, and an auditor was appointed, who returned his report to the County Court.

The only question raised upon the report of the auditor, was in relation to item number 15 in the plaintiffs' account, which was in these words, " Amount paid Bronson, per contract, $70 53."

In relation to this item, the auditor found and reported the following facts : That at the date of said charge, and for some time prior to doing any of the work hereinafter mentioned, one Bronson, a mill wright by trade, was indebted to the plaintiffs, who were merchants, on general book account, in a sum greater than the amount of said item. That some weeks prior to said charge, the defendant being about to erect a saw mill, the subject of em-

ploying Bronson to build or superintend the building of said mill, and have the defendant pay to the plaintiffs, the amount of his work to be applied on Bronson's account, became a matter of conversation between all of said parties, as was also the question, as to the manner in which the price of such labor should be secured to the plaintiffs and secured from the trustee process, said Bronson being at the time indebted to other persons, and of little pecuniary responsibility, though plaintiffs deemed the account against him good and ultimately collectable. Thereupon it was agreed between said Bronson and the defendant, that Bronson should superintend and aid in the erection of said mill, for which he was to be paid at the rate of $1 50 per day, for his services, said Bronson promising said defendant, to make a mill at the proposed point, that would perform 200 revolutions per minute, and do a good business on that stream, and if it did not, he, defendant, need not pay him any thing, at the same time explaining to the defendant the manner of the construction.

Bronson built the mill in the manner proposed, and during the progress of the work, the defendant doubted the propriety of his plan, and remonstrated against it; but Bronson claimed to know how to build it and proceeded with his work as stated. By means of some error in the arrangement, the works were swept away and destroyed the first time they attempted to use it, and within a few days after, the charge No. 15 was made. The auditor found that the said Bronson's work was in fact of no value, but an injury to the defendant.

That it was agreed between the parties, that Bronson at the end of each week, should draw an order on the defendant in favor of the plaintiffs for the amount of his work during the week, at $1 50 per day. All these terms and conditions were mutually understood and agreed upon between the parties, except that the plaintiffs had no knowledge or notice of any terms in the contract, as between the defendant and Bronson, whereby Bronson's pay was to depend upon any condition, except that of his actual daily labor.

That orders were drawn from week to week with the knowledge and assent of defendant, who personally delivered some of them to the plaintiffs, who laid them aside from time to time intending to charge them all up when they got through. The auditor also found that throughout the whole transaction, the defendant sup-

posed and understood that he was only bound to pay the plaintiffs to the extent, that he should be finally liable to Bronson under his contract, and that the drawing of the orders and charge on the book and all that he said about earnings, was all subject to his contract with Bronson, and that the plaintiffs on the other hand not being aware of the conditions of such contract, supposed and understood that they were to be entitled absolutely to the $1 50 per day, of such actual labor.

It also appeared, that the defendant had been trusteed and disclosed in that suit, that he had agreed to pay to the plaintiffs, and that nothing was due Bronson, &c.

The County Court, March Term, 1853—PECK, J., presiding—decided that the plaintiffs were entitled to recover for the amount of said item.

Exceptions by defendant.

*Phelps & Chittenden* for defendant.

I. The debt due from Bronson to the plaintiffs had all accrued before the contract between plaintiffs, defendant and Bronson was made. By the terms of that contract, defendant was to pay plaintiffs "*all that Bronson earned.*" The report shows that Bronson *earned* nothing. They could have no greater benefit from the contract than Bronson himself.

1. This contract was void by the statute of frauds. It was for the payment of the debt of Bronson already accrued, and was not in writing. *Sampson* v. *Patten*, 4 Johns. 422. *Jackson* v. *Rayner*, 12 Johns. 291. *Barker* v. *Bucklin*, 2 Denio, 45, 60. Roberts on frauds, 228, 242.

2. It was not binding upon the defendant beyond the amount of Bronson's actual earnings. Beyond that point it was void for want of consideration. *Arden* v. *Rowley*, 5 Esp. 254.

II. The charging over of the orders with the assent of the defendant before it was ascertained whether Bronson had earned any thing, did not vary the rights of the parties.

1. It did not take the case out of the statute, because there was no writing executed, and the debt against Bronson was not discharged. 2. Nor can the defendant be made liable upon the ground that plaintiffs have lost any rights against Bronson. They have not discharged the debt against Bronson. The case shows

that they considered him responsible, and it expressly finds that defendant did not intend to assume Bronson's debt.

*Maynard & Mead* for plaintiffs.

I. From the facts reported by the auditor, it appears that the undertaking of the defendant to pay the plaintiffs the amount of Bronson's labor, amounted to an independent contract. *Saunders* v. *Davis*, 9 Vt. 136. *Arbuckle* v. *Hawks*, 20 Vt. 538.

II. The orders were drawn with the knowledge and consent of the defendant, and some of them by him delivered to the plaintiffs, and at the request of the defendant charged to him by the plaintiffs, the defendant saying that was the agreement.

These facts amount to an acceptance of the orders.

The plaintiffs' rights are not to be affected by any conditions in the contract between the defendant and Bronson, which were not communicated to the plaintiffs, and made a part of the defendant's understanding with them.

The opinion of the court was delivered by

BENNETT, J. No question is made in relation to the auditors report, except as to item 15 in the plaintiffs' account.

By that charge, the plaintiffs seek to recover a portion of their debt, which was originally against Bronson.

It was agreed between the three parties, that Bronson should superintend the building of a saw mill for the defendant, and that he should pay to the plaintiffs the amount of Bronson's earnings, to be applied on the plaintiffs' account against him; and his wages were estimated to be at the rate of $1 50 per day, which the defendant was to pay the plaintiffs.

There was a provision in the contract between defendant and Bronson, that if the mill did not do a good business, the defendant need not pay anything.

The auditor reports, that the mill was good for nothing, and Bronson's labor a damage to the defendant. But this provision in the contract was not communicated to the plaintiffs, and they supposed the $1 50 per day was absolutely payable.

It is perfectly clear, that upon the facts reported, Bronson had no claim against the defendant, which he could enforce; and the question is, can the plaintiffs enforce payment where nothing was due to Bronson?

It is quite clear, that when the agreement was made, by which the defendant was to make payment of Bronson's wages to the plaintiffs, it was upon a valid consideration, which was to pass from Bronson to the defendant, and in the end it turned out this consideration failed.

We can not see upon what ground the plaintiffs can recover this item. The defendant, as it turned out, received no value for his promise to the plaintiffs; and the plaintiffs have *parted with* nothing. Their debt against Bronson had been previously contracted, and the auditor does not find that the plaintiffs at any time agreed to forego any right against Bronson. If such had been the fact, the case would have merited a different consideration.

The orders were drawn by Bronson upon the defendant, in favor of the plaintiffs, from week to week, to avoid the trustee process; and the defendant agreed to accept them, upon the ground that he was only to be bound to the amount of his indebtedness to Bronson, and when the orders were looked up and charged over, it was with the same understanding on the part of the defendant.

The fact, that the plaintiffs supposed Bronson was at all events, to have $1 50 per day, can make no difference, as it does not appear that they, relying upon this, parted with any right as against Bronson.

The failure of consideration doubtless was unexpected to both plaintiffs and defendant; but we see no good reason why the defendant can not avail himself of it.

The judgment of the County Court is reversed; and judgment for defendant for the sum reported due him after deducting the 15th item from the plaintiffs' account.